UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| HARRY EVANS,<br>    *Plaintiff*, | ) CASE NO. 3:25-CV-00037 (KAD)<br>)<br>) |
| v. | )<br>) |
| FIRST STUDENT, INC.,<br>    *Defendant*. | ) January 9, 2026<br>) |

**MEMORANDUM OF DECISION**
**RE: MOTION TO DISMISS [ECF NO. 19]**

Kari A. Dooley, United States District Judge:

Plaintiff Harry Evans ("Plaintiff" or "Evans") brings this employment discrimination case against Defendant First Student, Inc. ("Defendant" or "First Student"). Plaintiff alleges, as relevant here, violations of the Connecticut Fair Employment Practices Act (CFEPA), Conn. Gen. Stat. § 46a-60(b)(1), for disability discrimination (Count 1) and age discrimination (Count 3), and violations of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.* (Count 4). Defendant filed a partial motion to dismiss Counts 1, 3, and 4, which Plaintiff opposes. For the reasons that follow, Defendant's motion to dismiss is GRANTED.

**Standard of Review**

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting

1

*Twombly*, 550 U.S. at 557). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

**Allegations and Procedural History**

Herein, the Court only recites those facts and allegations that are relevant to Defendant's motion to dismiss. For the purposes of the motion to dismiss, these allegations are accepted as true. *See Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020).

Plaintiff is a 55-year-old, African American man, who is a resident of Windsor, Connecticut. Compl., ECF No. 1, ¶¶ 1, 5. First Student is a Delaware corporation which provides school bus services to different states. *See id.* ¶ 2. Plaintiff began working for the Defendant at their New Haven office in 1994. *Id.* ¶ 5. There, he worked as an Assistant Manager, and he was tasked with setting employee schedules for second shift, scheduling bus routes, and overseeing employees. *Id.* ¶ 6. At the time of the allegations in the Complaint, Plaintiff was supervised by Melissa Morin ("Morin"). *Id.* ¶ 7. In 2022, Plaintiff suffered his first stroke, and in November 2023, Plaintiff had a second stroke, which caused him to be hospitalized for two to three weeks. *Id.* ¶ 8. Plaintiff was out from work on approved FMLA leave from November 2023 to March 23, 2024, of which Defendant had knowledge. *Id.*

When Plaintiff returned to work in March 2024, he resumed his full duties and workload. *Id.* ¶ 9. Following Plaintiff's return, however, he began to hear from colleagues about comments that Morin was making about him. *Id.* ¶ 10. For instance, he was told that "Morin is out to get you" by one of his subordinates. *Id.* On or about May 24, 2024, a fellow First Student employee

approached Plaintiff and reported overhearing Morin telling other employees that she was going to "get [Plaintiff] fired." *Id.* ¶ 15. Following this, Plaintiff overheard Morin on a speaker phone call with another First Student employee, during which Morin accused Plaintiff of being "problematic" during a shift. *Id.* On June 1, 2024, Plaintiff was issued a written disciplinary notice, claiming that he missed 14 days of work (which Plaintiff denies). *Id.* ¶ 17. Two days later, on or about June 3, 2024, Plaintiff attended a meeting where he was accused of urinating next to his vehicle, after which, he was suspended. *Id.* ¶ 18. Three days later, Plaintiff was asked to attend another meeting. *Id.* ¶ 19. At this meeting, on June 7, 2024, Plaintiff was notified that his employment was being terminated by the Defendant. *Id.* ¶ 20.

Plaintiff originally filed the Complaint in Connecticut Superior Court, and Defendant timely removed the action to federal court on January 8, 2025. He asserts five causes of action: disability and/or perceived disability discrimination under the CFEPA (Count 1); race discrimination under the CFEPA (Count 2); age discrimination under the CFEPA (Count 3); interference under the FMLA (Count 4); and retaliation under the FMLA (Count 5). Defendant moved to dismiss only Counts 1, 3, and 4.

**Discussion**

*Count 1: Disability or Perceived Disability Discrimination*

Defendant contests Plaintiff's CFEPA disability claim on two grounds: first, that Plaintiff has not successfully alleged he was disabled and/or perceived to be disabled under the statute; and second, that Plaintiff has not successfully alleged that he was terminated because of his disability or perceived disability. Def.'s Mem. of Law, ECF No. 21, at 5–8. In opposition, Plaintiff argues that Defendant's knowledge of his stroke and his subsequent FMLA leave was sufficient to allege

3

that he was perceived to be disabled[1] and that he was terminated because of that perception. Pl.'s Opp'n, ECF No. 21, at 5–9. The Court agrees with Defendant.

CFEPA claims are analyzed under the same burden-shifting framework as ADA claims are, as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Clark v. Stop & Shop Supermarket Co.*, No. 3:15-CV-304 (JCH), 2016 WL 4408983, at *3 (D. Conn. Aug. 16, 2016) (collecting cases); *Feliciano v. Autozone. Inc.*, 316 Conn. 65, 73 (2015) ("We look to federal law for guidance on interpreting state employment discrimination law, and the analysis is the same under both."). "Under this framework, a plaintiff must first establish a *prima facie* case of discrimination." *Ruiz v. County of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010). To make out a *prima facie* case for disability discrimination, Plaintiff must show that (1) he is a person with a disability under the meaning of the ADA or CFEPA; (2) Defendant is an employer subject to the ADA; (3) he could perform the essential functions of his job with or without reasonable accommodation; and (4) he was terminated or suffered some other adverse employment action because of his disability. *Wanamaker v. Town of Westport Bd. of Educ.*, 11 F. Supp. 3d 51, 76 (D. Conn. 2014) (citing *Reeves v. Johnson Controls World Servs. Inc.*, 140 F.3d 144, 149–50 (2d Cir. 1998)). The burden of proof that an employment discrimination plaintiff must meet to survive a motion to dismiss at the *prima facie* stage is de minimis. *See Dawson v. N.Y.C. Transit Auth.*, 624 F. App'x 763, 770 (2d Cir. 2015) (summary order).

The Complaint fails to state a claim under the CFEPA under both the first and fourth prong of his *prima facie* case. While Plaintiff's burden may be exceedingly low at this stage, it is a

---

[1] As indicated, Defendant first argues that the allegations do not plausibly allege that Plaintiff was "disabled," as that term is defined under the statute. In response, Plaintiff makes clear that his disability claim is framed as a "perceived disability" claim—*i.e.*, that regardless of whether he was legally or medically disabled, Defendant perceived him to be disabled, and thus, he is a member of a class protected by the CFEPA and ADA. Pl.'s Opp'n, ECF No. 21, at 5–7. Because Plaintiff does not make a meaningful distinction between his alleged status as disabled or perceived-to-be-disabled, the Court does not address Defendant's argument regarding the sufficiency of the allegations that Plaintiff is medically disabled.

burden of some measure, nonetheless.  For the first prong—whether Plaintiff is a person with a disability or was perceived to be disabled under the CFEPA—Plaintiff only alleges that the Defendant had knowledge of the multiple strokes that he suffered between 2022 and November 2023, and that they knew of his FMLA leave for those strokes.  Compl. ¶ 8.  But "[t]he mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate . . . that the employer regarded the employee as disabled."  *Kruger v. Hamilton Manor Nursing Home*, 10 F. Supp. 3d 385, 389–90 (W.D.N.Y. 2014).  Although the burden at this stage is very low, Plaintiff must provide something more than mere knowledge of his prior strokes to demonstrate that Defendant perceived him as disabled.  *See id* (an employer's knowledge of a plaintiff's broken arm alone was insufficient to state a claim that the employee was perceived to be disabled); *Gonzalez v. Legends Hosp.*, No. 14-CV-6478 (DLI) (RER), 2017 WL 1166344, at *6–7 (E.D.N.Y. Mar. 27, 2017) (a plaintiff's absence on medical leave for a medical condition, and the employer's knowledge of that leave, without more context and connection to her termination, does not state a claim that the plaintiff was perceived to be disabled).

In opposition, Plaintiff relies on unspecified "responsive comments" by Plaintiff's supervisors, and he argues that such comments, coupled with knowledge of his medical leave and strokes, is sufficient to state a claim for perceived disability.  Pl.'s Opp'n at 6.  However, none of the comments alleged in the Complaint appear connected to Plaintiff's medical condition.  *See* Compl. ¶ 10 (alleging that one of Plaintiff's subordinates said that Morin was "out to get [him]"); *id.* ¶ 15 (alleging that Morin called Plaintiff "problematic," and that another employee overheard Morin say that she was going to get Plaintiff fired).  For this reason, Plaintiff's reliance on *Buotote v. Ill. Tool Works, Inc.*, 815 F. Supp. 2d 549 (D. Conn. 2011), is misplaced.  There, the plaintiff successfully alleged a perceived disability where a supervisor frequently warned him to "'watch

5

it' to avoid 'get[ting] hurt because of [his] back,'" and told him that he was out of work a lot and that he had a lot of "bad luck." *Buotote*, 815 F. Supp. 2d at 558 (quotations and alterations in original). A similar connection between the comments that Plaintiff alleges and his alleged perceived disability is absent here. Thus, without more, Plaintiff has not plausibly alleged the Defendant perceived him to be disabled as required under the CFEPA.

For the same reason, Plaintiff also fails to meet the fourth prong of his *prima facie* case, that he was terminated "because of" his perceived disability. Other than Defendant's knowledge of his multiple strokes and FMLA leave, Plaintiff points to no other factual allegations to support an inference that he was fired because of his perceived disability. Other than the comments analyzed above (which, as explained, do not appear connected in any way to Plaintiff's strokes or medical leave), Plaintiff only alleges that he was issued an incorrect written disciplinary notice for missing 14 days of work, was suspended for allegedly urinating next to his work vehicle, and was subsequently terminated following these occurrences. Compl. ¶¶ 17–18, 20. There are no allegations (either temporal or contextual) that support the inference that his termination was motivated by his allegedly perceived disability. *See Gonzalez*, 2017 WL 1166344, at *7 (finding that plaintiff failed to state a claim under ADA because "Plaintiff fails to connect his injury to his termination").

Thus, Defendant's motion to dismiss Count 1 is GRANTED.

*Count 3: Age Discrimination*

Defendant also moves to dismiss Plaintiff's CFEPA age discrimination claim because Plaintiff fails to allege sufficient facts to give rise to an inference of discrimination. Def.'s Mem. of Law at 9–10. In opposition, Plaintiff argues that he suffered from "age-related infirmities," and

that this alone is sufficient to make out a claim for age discrimination. Pl.'s Opp'n at 9–10. The Court once again agrees with Defendant.

Similarly to disability CFEPA claims, Connecticut courts have looked to the analogous federal statute, the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.*, to interpret CFEPA age discrimination claims. *See Aiello v. Stamford Hosp. Inc.*, No. 3:09-CV-1161 (VLB), 2010 WL 3925451, at *5 (D. Conn. Sept. 29, 2010). Therefore, CFEPA age discrimination claims are also analyzed under the *McDonnell Douglas* burden-shifting framework. *Mendillo v. Prudential Ins. Co. of Am.*, 156 F. Supp. 3d 317, 337–38 (D. Conn. 2016). In order to set forth a *prima facie* case of age discrimination, Plaintiff "must show (1) that [he] was within the protected age group, (2) that [he] was qualified for the position, (3) that [he] experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Id.* at 338 (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010)). Plaintiff's burden at this stage is also "de minimis." *Id.*

As with his disability discrimination claim, the Complaint is devoid of facts that could give rise to an inference that the adverse action was motivated by Plaintiff's age. The Complaint relies almost wholly on conclusory allegations to show that Plaintiff suffered an adverse employment action due to his age. *See* Compl. ¶¶ 34–38. The only non-conclusory allegation with regards to his age that Plaintiff offers is that he was 55 when he was terminated, and thus, he was over the age of 40. *Id.* ¶ 5. But as the Second Circuit has often stated, Plaintiff's status as a member of a protected class alone is insufficient to raise a plausible inference of discrimination. *See Grillo v. N.Y.C. Transit Auth.*, 291 F.3d 231, 235 (2d Cir. 2002); *Ochei v. The Mary Manning Walsh Nursing Home Co.*, No. 10-CV-2548 (CM), 2011 WL 744738, at *3 (S.D.N.Y. Mar. 1, 2011). This has equal applicability to an age discrimination claim where the only factual allegation is that

7

the plaintiff is over the age of 40. *See Bockus v. Maple Pro, Inc.*, 850 F. App'x 48, 52 (2d Cir. 2021) (summary order); *see also Wallace v. Wesleyan Univ.*, No. 3:23-CV-1461 (VAB), 2024 WL 3638260, at *5 (D. Conn. Aug. 2, 2024).

Notwithstanding, in his opposition, Plaintiff asserts that because he suffered from "age-related infirmities," an inference of age discrimination may be drawn. Pl.'s Opp'n at 9–10. As Defendant points out in reply, Def.'s Reply, ECF No. 29, at 7, Plaintiff cites no authority to support this argument. And he provides no basis for the Court to find that the allegation of certain "age-related infirmities" alone can make out a case of age discrimination under the CFEPA.[2] Further, as Defendant correctly notes, "any such claim would surely be redundant of [a] disability discrimination claim." *Id.* (collecting cases); *see Geiger v. AT&T Corp.*, 962 F. Supp. 637, 643 (E.D. Pa. 1997) ("[T]erminating employees based on age-related disabilities does not violate the ADEA.").

Because the Plaintiff fails to allege any non-conclusory facts to support a plausible inference of age discrimination, he has failed to state an age discrimination claim under the CFEPA. The motion to dismiss Count 3 is GRANTED.

### *Count 4: Interference Claim Under the FMLA*

Defendant also moves to dismiss Count 4, which is styled as a claim for interference with Plaintiff's rights under the FMLA. Compl. ¶¶ 39–44; Defs.' Mem. of Law at 11–12. In Plaintiff's opposition, he indicated that he "does not contest dismissal of his claims for FMLA Interference set out in the Fourth Count," and indeed, he did not brief this claim in his opposition. Pl.'s Opp'n

---

[2] Likewise, the Court is not prepared, absent medical authority, to accept the assertion that a stroke is an "age related infirmity." And the Court suspects that the many people who have suffered a stroke before the age of 40 would readily disagree. Indeed, roughly 70,000 people under the age of 45 suffer a stroke each year. *See Stroke Before Age 45*, Sutter Health, https://www.sutterhealth.org/health/stroke-before-age-forty-five (Sept. 26, 2024).

at 1 n.1; *see* Def.'s Reply at 1–2.  With this explicit abandonment of this claim, the motion to dismiss Count 4 is GRANTED.

**Conclusion**

For the foregoing reasons, Defendant's motion to dismiss Counts 1, 3, and 4 is GRANTED.

**SO ORDERED** at Bridgeport, Connecticut, this 9th day of January, 2026.

       */s/ Kari A. Dooley*
       KARI A. DOOLEY
       UNITED STATES DISTRICT JUDGE